IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH FRIEL, individually and on behalf of a class of all persons and entities similarly situated, | No. 3:25cv882 |
| Plaintiff | (Judge Munley) |
| v. | |
| ETN AMERICA INC. and SHLOMI COHEN, | |
| Defendants | |

## MEMORANDUM ORDER

Defendant ETN America, Inc. ("ETN") entered into a written agreement with a third-party lead seller whereby ETN agreed to keep certain information confidential. The agreement prohibits ETN from disclosing information except "as may be required by...order of a court[.]" Upon consideration of a motion to compel filed by Plaintiff Joseph Friel in this litigation against ETN, ETN now has that order of court to comply with its agreement with the third-party lead seller. Defendants will be compelled to provide the identity of the lead seller to Friel for the reasons set forth below.

*Friel's Complaint* - On May 19, 2025, Friel filed this putative class action pursuant to the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227, ("TCPA"), against Defendants ETN and Shlomi Cohen ("Cohen") (Doc. 1). Friel's

complaint seeks to represent a nationwide class of robocall recipients and a class of recipients on the National Do Not Call Registry ("DNCR"). Id.

As alleged, ETN operates a website, contractors99.com. Id. ¶¶ 25–27. In furtherance of that business, ETN placed pre-recorded telemarketing calls. Id. Friel alleges that he received five (5) telemarketing calls from ETN at his personal residential telephone number, which is on the DNCR. Id. ¶ 30. According to the complaint, Friel has never been a customer of ETN or Cohen. Id. ¶ 31.

On May 13, 2025, "to identify the identity of the identity [sic] of the individuals calling him illegally, and for no other reason," Friel engaged with the telemarketing call. Id. ¶ 37. The call began with a prerecorded voice, possibly using an AI-powered telephone agent or a Mechanical Turk worker, *i.e.*, a human being powering what appears to be a machine-driven process. Id. ¶ 34. That voice began asking recorded questions about home improvements and windows. Id. ¶ 35. Friel's complaint did not detail his answers, but eventually, he was transferred to "a human being who was obviously human." Id.

Afterward, Friel received text solicitations for window replacements and home contractor services. Id. ¶ 38. He included screenshots of seven (7) text messages to his iPhone device in the complaint. Id. Some of the messages

identify the sender as "Tom" or "Mike" from "Install America." Other messages provide links to ETN's contractors99.com website or to a toll-free number. Id.

Friel filed this action six (6) days later. The complaint asserts two causes of action against ETN and Cohen, one on behalf of a proposed Robocall Class under 47 U.S.C. § 227(b) and one on behalf of a proposed DNCR Class under 47 U.S.C. § 227(c)(5). Friel also seeks to hold Defendant Cohen individually liable under the TCPA, 47 U.S.C. § 217. Friel alleges that Cohen personally participated in the violations by: "(a) selecting the script that was going to be used on the calling; (b) personally approving in the call center operations and (d) [sic] personally authorizing any other telemarketing conduct of ETN America." Id. ¶ 23.

*Issues with a Conditional Settlement* – On August 22, 2025, counsel for defendant advised that the parties had fully executed a "conditional settlement agreement" and anticipated submitting a stipulation of dismissal within the next 90 days. (Doc. 18). The parties requested that the case be closed for administrative purposes. Consequently, the court entered an order administratively closing the case on August 25, 2025 and provided the parties with 90 days to consummate the settlement. (Doc. 19).

Approximately 45 days later, on October 9, 2025, the parties submitted a letter to the court advising that settlement would not be completed. (Doc. 20).

3

That is, the parties advised that one of the conditions of settlement ostensibly allowed Friel to make written discovery demands of the defendants. Id. According to the letter, Friel had served an interrogatory seeking to learn the identity of the lead seller that led to the five (5) telemarketing calls described in plaintiff's complaint.[1] Id. Defendants, citing a contractual confidentiality agreement with the lead seller, objected to the request and refused to disclose their identity. Id.

The court reopened the matter on October 22, 2025, (Doc. 21), and directed defendants to file a response to the complaint, which they did on October 29, 2025, (Doc. 22). The court conducted a case management conference shortly thereafter. On December 31, 2025, as part of the litigation, Friel filed a motion to compel disclosure of the lead seller's identity pursuant to the Federal Rules of Civil Procedure. (Doc. 26).

*The Present Litigable Dispute* – Friel contends that the parties' conditional settlement agreement provides for the dismissal of this action against the defendants following the completion of limited discovery. Id. at 2. Additionally,

---

[1] Prior to May 2025, Friel had filed at least four (4) putative class actions in this federal district court alleging violations of the TCPA. See Friel v. North Star Ins. Advs., LLC, No. 3:24cv481; Friel v. Line 5, LLC, No. 3:24cv1866; Friel v. Selectquote Ins. Servs., Inc., No. 3:25cv153; Friel v. Gabriel A. Levy, P.C., No. 3:25cv502.

4

per the motion to compel, the parties' agreed that Friel would serve one limited discovery interrogatory requesting identification of the lead generation entity. Id. Whether the parties have conditionally resolved the matter or not, the court has directed litigation to move forward.

As for the present dispute, Friel's interrogatory provides:

> **INTERROGATORY NO. 1:**
> Identify the name, address, and contact information of the person(s) or entity(ies) that provided the call lead resulting in ETN's alleged calls to Plaintiff.

(Doc. 27-2).

Defendants objected as follows:

> **OBJECTION TO INTERROGATORY NO. 1:**
> Defendants object to the Interrogatory on the basis of confidentiality, including on the basis that a written agreement between ETN America Inc. and the entity that provided the lead resulting in ETN's alleged calls to Plaintiff provides in relevant part as follows:
>
> > 6. Confidentiality.
> >
> > a. "Confidential Information" means any information, data or know-how, whether in oral, written or electronic form (including, without limitation, that relating to developments, methods, inventions, processes, technology, research, engineering, designs, intellectual property, business plans, operations, current or prospective customers or suppliers, agreements with third parties, prices and costs, marketing, budgets or finances) that (A) is disclosed by the disclosing party or its Representatives to, or that is otherwise learned by,

5

> the receiving party or its Representatives in the course of discussions or business dealings with the disclosing party, and (B) has been identified as being proprietary and/or confidential or, by the nature of the circumstances surrounding the disclosure or receipt, reasonably ought to be treated as proprietary and/or confidential. Confidential Information also includes, but is not limited to, the terms of this Agreement. Confidential Information does not include information, data or know-how that (i) was legally within the receiving party's knowledge or possession prior to receipt from the disclosing party, (ii) is or becomes generally known to the public other than by a breach of this Agreement, (iii) is lawfully received from a third party who did not have confidentiality obligations to the disclosing party with respect thereto; or (iv) is independently developed by the receiving party without reference to or disclosure of the Confidential Information of the disclosing party, in each case as evidenced by the receiving party's records.
>
> b. During the term of this Agreement and for two (2) years thereafter, neither party shall disclose any Confidential Information of the other party except: (i) as expressly permitted by this Agreement; (ii) as may be required by law, regulation, or order of a court or government agency of competent jurisdiction (provided such other party is given prior written notice of such disclosure requirement and a reasonable time to contest or prevent such disclosure); or (iii) on a need-to-know basis to Representatives who are bound by obligations of confidentiality protecting the Confidential Information at least as stringent as those provided in this Section 6.

Id.

During litigation, the Federal Rules of Civil Procedure contemplate the ability of a plaintiff to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" FED. R. CIV. P. 26(b)(1).  The proportionality requirement considers: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Id.

Under the rules, Friel has the right to file a motion to compel where a party fails to answer an interrogatory. FED. R. CIV. P. 37(a)(3)(B)(iii).  "[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." FED. R. CIV. P. 37(a)(4).  Since the action against the defendants is pending in the Middle District of Pennsylvania, the court may issue an order compelling disclosure by the defendants in response to Friel's interrogatory. See Fed. R. Civ. P. FED. R. CIV. P. 37(a)(2).

The motion to compel can be resolved easily.  Defendants responded by indicating that they are parties to the above-referenced confidentiality agreement with the lead seller and that they furnished a copy of the interrogatory and the motion to the lead seller as part of their responsibilities under Paragraph 6 above. (Doc. 27).  The court takes defendants' response as indicating, in

7

essence, that defendants objected to the interrogatory to comply with the agreement and not subject themselves to a separate lawsuit by the lead seller.

Consequently, because the identity of the lead seller is not privileged and is relevant to Friel's TCPA claims in this matter, it is hereby **ORDERED** that:

1) Plaintiff's motion to compel, (Doc. 26), is **GRANTED**;

2) Within seven (7) days, defendants shall provide a full and complete answer to Plaintiff's Interrogatory # 1; and

3) Based upon the terms of the conditional settlement agreement, as represented to the undersigned by the parties in this litigation, the Clerk of Court is directed to close this case.

Date: 1/20/26

BY THE COURT:

JUDGE JULIA K. MUNLEY
United States District Court